GREENE v. GOODWIN SAND & GRAVEL CO.

McKINLEY v. SAME.

(Supreme Court, Special Term, Nassau County. June 29, 1910.)

1. HIGHWAYS (§ 77*)—VACATION—BOARDS—QUORUM.
   A consent to the closing of a highway by three of the six members of a town board, five being present, but only three participating, is, under General Construction Law (Consol. Laws, c. 22) § 41, as to quorum and majority, by less than a legal quorum.
   [Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 263–276; Dec. Dig. § 77.*]

2. HIGHWAYS (§ 77*)—VACATION—BOARDS—QUORUM—ACTION AFTER ADJOURNMENT.
   A consent to the closing of a highway, which at a meeting of the town board received the votes of less than a quorum, was not aided by its being signed, after adjournment of the meeting, by another member, who was not at the meeting.
   [Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 263–276; Dec. Dig. § 77.*]

3. HIGHWAYS (§ 77*)—RESTRAINING DISCONTINUANCE—PARTIES.
   It is no objection to maintenance of a suit to enjoin demolition of part of a highway, which would constitute a nuisance, and is threatened under a consent given by less than a quorum of the town board, that the lands of plaintiff, who would be particularly damaged thereby, while

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

bounded by the highway, are not bounded by the part threatened to be destroyed.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 263–276; Dec. Dig. § 77.*]

4. HIGHWAYS (§ 77*)—RESTRAINING DISCONTINUANCE.

Where destruction and removal by excavation, and not mere obstruction, of part of a highway is threatened, under a consent of less than a quorum of the town board, the remedy will not be limited to review by certiorari, but injunction will lie.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 263–276; Dec. Dig. § 77.*]

Two suits, one by Grace C. Greene and the other by Pauline C. Mc-Kinley, against the Goodwin Sand & Gravel Company. Decrees for plaintiffs.

Charles N. Wysong, for plaintiff Greene.

Coudert Bros. (Howard Thayer Kingsbury, Henry B. Culver, and Charles N. Wysong, of counsel), for plaintiff McKinley.

Charles R. Weeks (John J. Graham, of counsel), for defendant.

PUTNAM, J. These suits arise out of the attempted closing of a highway leading from Fort Washington to Sands Point, and sometimes designated as the "Barcas Point Road." It is testified to be an ancient thoroughfare, and is remembered as an old road by an aged witness able to speak of it as such in the period of. 1835 and 1840. Until what is known as the Middle Neck Road had been opened, it was the only means of communication from Port Washington to Sands Point, and is still much traveled, being the direct route from several residences to Port Washington.

The defendant is a gravel company (organized under the laws of Maine), which owned on both sides of this road lands from which it was taking out gravel. On August 10, 1909, the defendant applied to the highway commissioners of North Hempstead for the discontinuance of some 2,000 feet of this highway. It was represented by Mr. Weeks as attorney. Section 191 of the general highway law (Consol. Laws 1909, c. 25) authorized them to close or alter a highway, and they could, "with the written consent of the town board, make an order laying out or altering a highway, or discontinuing a highway, which has become useless since it was laid out."

Under this statute the defendant made application to the highway commissioners "to close and abandon the old road," and to open a new road, accompanied by terms purporting to release the town "from all damages by reason of the closing of said old road, and from all damage arising by reason of the opening of said new road." Mr. Wysong, who had been previously retained by certain residents to oppose the application, asked for an adjournment; but this was refused, and, by a majority vote, the commissioners proceeded to make an order declaring this highway abandoned. Application was then made to the town board (whose consent was necessary) to authorize this action. It was composed of the supervisor (Mr. Christ), town

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

clerk (Mr. Wood), and Justices Dodge, Weeks, Wysong, and Remsen. All appear to have been present, except Justice Remsen.

The board was sitting in Manhasset. Justices Weeks and Wysong, having had professional relations with the parties, declined to participate in any action, though present. This left only three qualified to vote—one less than a majority. These three, however, cast their votes in favor of the application, and signed the consent, whereupon the meeting adjourned. This "consent" was afterwards taken to Port Washington, where later in the same afternoon it received the signature of Justice Remsen, when the consent was filed. The defendant, having secured these consents, proceeded to close the road by barricades, which the inhabitants at first removed, and thereafter excavations were begun with steam shovels. The defendant also opened a temporary road through the woods.

Mrs. Greene, one of the plaintiffs, then sought relief in equity, and obtained a restraining order. The first restraining order was vacated, but an amended complaint followed, with a second restraining order. Mrs. McKinley started certiorari proceedings, and afterwards came into equity in aid of that legal remedy.

[1, 2] The commissioners made no attempt to find that the road now to be abandoned had become "useless." The so-called consent by the town board was by less than a legal quorum of its members. General Construction Law (Consol. Laws, c. 22) § 41. The subsequent signature of Justice Remsen, procured after the board had adjourned, was ineffective. Keeler v. Frost, 22 Barb. 400; People v. Nostrand, 46 N. Y. 375. Accordingly the proceedings purporting to close and discontinue the road were not in conformity with the statute, and were therefore invalid.

[3] Assuming, therefore, that defendant's closure and threatened destruction of the highway amounted to a nuisance, have the plaintiffs such a standing here as entitles them to this relief by injunction? The argument that equity will not review the action of subordinate town boards is not really in point, because these suits are not for that purpose. The suits are to prevent complete demolition of an ancient highway in general use. In the words of Scudder, J., on continuing the injunction in this case:

"The demolition of a public highway is an act which in law amounts to a public nuisance. It is a nuisance per se. It was unnecessary for plaintiff to allege in the complaint that the acts of the defendant in demolishing the highway were unlawful. The acts speak for themselves."

The testimony abundantly shows that the highway in question was a necessary means of daily access to the railroad station, post office, and shops at Port Washington, and that its destruction would work particular damage to the plaintiffs. The plaintiffs' lands, however, do not bound upon the portion of the road in controversy. One is about five-eighths of a mile, and the other about three-fourths of a mile, from this portion of the road.

Such acts, causing special damage to owners of land on such highway, impairing a right of access, give a right of action to the injured private owner. Ackerman v. True, 175 N. Y. 353, 67 N. E. 629;

Wakeman v. Wilbur, 147 N. Y. 657, 42 N. E. 341; Van Brunt v. Ahearn, 13 Hun, 388. In the latter case, it was said that the court "can administer relief in this class of cases on broad principles of justice, without reference to technicalities which formerly prevailed on this subject in courts of law."

It is, however, claimed that certain decisions refusing certiorari to review street and highway closings have limited the rights of such landowners as do not abut on the precise part of the road which is to be discontinued. This may be so where the town authorities validly determine that a road has become useless. The line of authority that denies damages to remote abutters upon a street, on the supposed ground that they are not legally affected by discontinuing other parts of the street, are actions or proceedings at law. Smith v. City of Boston, 7 Cush. (Mass.) 254; Reis v. City of New York, 113 App. Div. 464, 99 N. Y. Supp. 291. Defendant also cites People ex rel. Bushnell v. Newell, 131 App. Div. 555, 115 N. Y. Supp. 399, holding that such remote abutters are not legally affected by a closure beyond their own boundaries. The original statement of this doctrine, however, was not the broad generalization as now asserted. Shaw, C. J., in Smith v. City of Boston, supra, said (page 257):

"We do not mean to be understood as laying down a universal rule that in no case can a man have damages for the discontinuance of a highway unless his land bounds upon it, although as applicable to *city streets, intersecting each other at short distances,* it is an equitable rule."

. .Applied to the road here in question, it would be hard to find a more inequitable result than are the consequences of such a doctrine. Defendant's contention would lead to this: Once given a consent of two opposite abutting landowners, no one could then prevent the destruction of the highway between them, without regard to the rights of the other landowners along the line of this sundered roadway. Mere obstructions in a highway, easily removable ordinarily, are but a temporary and passing inconvenience. Here was threatened the entire carrying away of the roadway by steam shovels that would quickly transform its surface into a deep excavation doing damage truly irreparable to those whose business called them to pass and repass over this roadway in their daily course.

[4] The power to alter a highway means to improve its direction, so that it may better serve public interests. People v. Judges Cortland County, 24 Wend. 491. Where, instead, the roadway is about to be destroyed, and its material physically removed, the courts are not limited to reviewing the proceedings by certiorari, but should interfere to restrain such threatened injury. Both plaintiffs are entitled to injunctive relief, which as to Mrs. McKinley is ancillary to her certiorari proceedings.

Decrees (to be settled on notice) are given in both cases, restraining defendant from closing, excavating, or interfering with any part of this highway, with costs.