AUGUST H. LANGE, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 18311.)

Court of Claims, November 5, 1928.

*Albert Ottinger, Attorney-General [Albert H. Danaher, Deputy Assistant Attorney-General,* of counsel], for the State.

*John R. Parker,* for the claimant.

POTTER, J. This is one of a large number of claims filed against the State by property owners in the village of Scotia, town of Glenville, Schenectady county, for damages alleged to have been sustained by reason of the closing by the State of the Schenectady-Scotia bridge across the Mohawk river.

The bridge in question was built across the Mohawk river under the authority of laws passed for such purpose in the years 1800 and 1805 and was a toll bridge between the city of Schenectady and the village of Scotia. The Schenectady end of the bridge connected with Washington avenue in that city and the Scotia end was at the junction of Schonowee avenue and Washington

avenue. Up till the year 1873 this bridge was a toll bridge owned and operated by a private corporation. In that year, by chapter 659, the Legislature authorized the town of Glenville to purchase the bridge. This was done and the bridge was deeded to the town in August, 1873. The bridge continued thereafter to be a toll bridge until 1917 when, by chapter 735, the Legislature provided that the State of New York take over the said bridge, converting it into a " free bridge " to be owned and operated by the State. The same act of 1917, chapter 735, provided for the erection of a new bridge to extend from the junction of State street and Washington avenue in the city of Schenectady to a point in Mohawk avenue about 300 feet westerly of the junction of Schonowee and Mohawk avenues in the village of Scotia. The same act provided that the new bridge should be built to take the place of the existing toll bridge connecting the city of Schenectady and the village of Scotia, the bridge involved in this claim.

The new bridge was built as provided in the act of 1917, chapter 735, and the amendments thereto, and was and is a great public improvement. It was opened for traffic on December 19, 1925. On December 26, 1925, the old Schenectady-Scotia bridge was discontinued for traffic.

The claimant, at the time this bridge was closed, had no property right therein, nor did he have any franchise or vested right therein. He had the right in common to the general public to use said bridge as long as it was maintained for public travel.

The only question involved in this claim is whether the claimant, who owns property situated on Washington avenue in the village of Scotia, town of Glenville, Schenectady county, is entitled to recover damages against the State by reason of the discontinuance of a bridge across the Mohawk river extending from the city of Schenectady to the village of Scotia.

The State in making this great public improvement determined that public interests would be best served by locating the new bridge at a different place.

No part of the property of claimant was taken or invaded by the construction of the new bridge, and no part of the old bridge which was closed to traffic in December, 1925, was located on claimant's property.

The business section of the village of Scotia and its principal residential section are located north and west of the new bridge. The direct route to Amsterdam and the west is along Schonowee avenue. This street is open. Washington avenue, upon which is located the claimant's property, is open and connects with Schonowee avenue. Washington avenue remains open and opens

into Schonowee avenue at one end and into across streets at the other, the same as it did before the old bridge was closed to traffic.

The distance from claimant's property in the village of Scotia to the corner of State street and Washington avenue in Schenectady over the old bridge was about 2,700 feet. This route led through Washington avenue in Schenectady, a narrow congested street having trolley tracks located thereon. The very condition of this route made it hard to travel upon during certain times of the year, namely, during the winter when snow delayed and hindered travel. Since the construction and opening of the new bridge and the closing of the old one, the route from the property of claimant to State street and Washington avenue in Schenectady is over Washington avenue in Scotia to Schonowee avenue and thence westerly over Schonowee avenue to the new bridge and then over the new bridge to the corner of State street and Washington avenue in Schenectady. This is about 7,000 feet, but over wide streets and over a wide bridge. So that while the distance between the two points is now greater than when the old bridge was open to traffic, it is safe to say that the new bridge furnished a safer and speedier way for travel than the old bridge afforded by reason of the narrow and congested streets leading to such bridge.

It must be borne in mind that in making this great public improvement the State had the absolute right to determine which route would best serve the public generally, and while the claimant may not be able to get from his place to the city of Schenectady as quickly by the new route and across the new bridge, that in itself affords him no claim against the State. In the absence of a statute making the State of New York liable for consequential damages, claimant cannot recover for these indirect damages. (See *Coster* v. *Mayor of Albany*, 43 N. Y. 399, and especially from p. 413.) That is the leading case in this State, the facts in which are much like the facts in the instant case. Judge FOLGER, writing for the court, discusses the facts and states the rule as follows: " The plaintiffs further claim that the best approach to their property having been by the Hamilton street bridge, and that having been entirely removed by the agents of the State, a damage has resulted to their property for which the city is liable. No part of the bridge was on the property of the plaintiffs. They had no interest or right in it as property. There is left to the plaintiffs an approach to their property by the State street bridge, though less near, less easy, less commodious. The damage to the plaintiffs' property from this cause is entirely indirect and remote. It is not claimed to the contrary, and we shall assume that the State had right, by virtue of this act or from other source, to do this work, and in

doing it to remove this bridge. The bridge, so far as the plaintiffs were interested in it, was but a part of a public street or highway. Over streets and highways the legislature has control, and may, when no private interests are involved or invaded, close them, and altogether relinquish their use by the public. (*The People* v. *Kerr*, 27 N. Y. 188–92.) And if in the exercise of this right a street be discontinued, and the value of lands abutting on other parts of the street, and on neighboring streets, is lessened, it is not such an injury to the owner as to entitle him to damages. (*Smith* v. *City of Boston*, 7 Cush. 254.)" The rule as stated by the Court of Appeals in the *Coster Case* (*supra*) has been consistently and uniformly followed down to the present day.

In *Fearing* v. *Irwin* (55 N. Y. 486, 490), Judge FOLGER, referring to the *Coster* case, said: " This court has held, however, that, though one public way to property is closed, if there is another left, the property owner sustains no actionable damage."

In *Matter of City of New York* (*West 151st Street*) (149 App. Div. 55, 66) Judge LAUGHLIN said: " If the property in question had other means of access, then, not being an abutting owner on the street discontinued, he would have no standing in this proceeding."

In *People ex rel. Bushnell* v. *Newell* (131 App. Div. 555, 558) it appeared that the line of the south end of the discontinued highway was a part of the north line of a highway adjacent to relator's premises, but no part of the discontinued highway adjoined them. Mr. Justice ROBSON, writing for the court in the Fourth Department, said: " He is, therefore, not the owner of lands so affected by the discontinuance of the highway as to entitle him to damages for discontinuing it. * * *

" The inconvenience he suffers by reason of the discontinuance comes to him in common with the general public whose business or pleasure might lead them to continue to use the highway if it had not been discontinued. His special injury not common to the general public is that he, perhaps, might have more frequent occasion for its use than persons living at a greater distance from it.

" The order of the highway commissioner discontinuing the highway should be confirmed and the writ dismissed."

In *Matter of Joiner Street* (*City of Rochester*) (177 App. Div. 361) the facts were that in order to enable the New York Central and Hudson River Railroad Company to build a new station, the common council of the city of Rochester closed and discontinued the southern portion of Joiner street, and the question was as to whether or not the owners of lots abutting upon that part of the street not discontinued were entitled to damages. Mr. Justice DE ANGELIS, writing for the court in the Fourth Department, said:

" In the case at bar, assuming that the abutters own the fee in that portion of the street in front of their lots to the center thereof, the discontinuance in question in no manner affects or interferes with that ownership."

And then again (at p. 369) the learned justice said: " We think that these claimants, especially with Hamburg street furnished for their convenience as it now exists, have sustained no actionable damages."

So in the instant case, the new bridge was built as a great public improvement to take the place of the old one.

In *City of Corning* v. *O'Neill* (180 App. Div. 454, 456; affd., 227 N. Y. 625) Presiding Justice KRUSE said: " * * * we do not think that the mere change of grade of a street, or closing it altogether at some point not in front, but beyond the premises, entitled him to damages."

And again in discussing the case of *Matter of Joiner Street* (*supra*) Presiding Justice KRUSE said that in that case the court held, " * * * lotowners abutting upon the part not discontinued were not entitled to damages for closing the street beyond their premises."

In the case of *Reis* v. *City of New York* (188 N. Y. 58) a portion of Hawthorne street was closed for the purpose of building a hospital thereon and Judge WILLARD BARTLETT, writing for the Court of Appeals, said: " Inasmuch as Hawthorne street remains wholly open in front of those blocks upon which plaintiff's property is situated and opens into cross streets at both ends of each block, and inasmuch as there is no suggestion that the erection of the hospital building on the closed portion of Hawthorne street between Kingston and Albany avenues will in any wise obstruct the plaintiff's property so far as light and air are concerned, I am of opinion that the plaintiff has not been deprived of any private easement to which she became entitled by reason of her purchase with reference to the Pecare map."

In view of the well-settled law as applicable to the instant case, the claimant has failed to make out a case which would entitle him to damages against the State of New York and his claim is dismissed.

ACKERSON, P. J., concurs.